```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Adriana Serna and
Charlie Serna

    v.                                                   Civil No. 14-cv-049-JD
                                                        Opinion No. 2015 DNH 138

Lafayette Nordic
Village, Inc., et al.

## O R D E R

While on visiting friends in New Hampshire, Adriana Serna went skating at Nestlenook Farm and Resort ("Nestlenook") and was injured when she fell while walking to the warming gazebo. Adriana and her husband, Charlie Serna, brought suit against the owners and operators of Nestlenook, alleging that the defendants were negligent in maintaining the path and failing to warn of dangers, that they were negligent in training and supervising the staff at Nestlenook, and that their negligence caused Adriana's fall and Charlie Serna's loss of consortium. The defendants move for summary judgment on the ground that the release Adriana signed bars her claims.

## Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Santangelo v. New York Life Ins. Co., 785 F.3d

65, 68 (1st Cir. 2015). "A genuine issue is one that can be resolved in favor of either party, and a material fact is one which has the potential of affecting the outcome of the case." Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013) (internal quotation marks omitted). In deciding a motion for summary judgment, the court draws all reasonable factual inferences in favor of the nonmovant. Kenney v. Floyd, 700 F.3d 604, 608 (1st Cir. 2012).

## Background

On February 28, 2011, Adriana went to Nestlenook with her friend and former employer, Melissa Rigazio, Melissa's daughters, and a friend of one of the daughters. Adriana and the girls rented ice skates to use on Nestlenook's skating pond.

Nestlenook provided a warming gazebo near the skating pond where renters changed into and out of their skates. The route between the gazebo and the pond consisted of a six-foot portion covered by rubber mats followed by a set of stairs.

The form for renting skates at Nestlenook included a release of liability on the reverse side. As part of renting the skates, Adriana signed the rental form.

After skating, Adriana walked from the pond up the stairs to the path that led to the warming gazebo. At the top of the stairs, Adriana stepped onto a rubber mat that had been placed

on the path, which she contends was icy and buckled.  There was no hand rail.  She took several steps and then slipped and fell, injuring her ankle, which later required surgery.

The Sernas filed suit against Lafayette Nordic Village, Inc., Olde Jackson Village, Inc., and Robert Cyr as the owners and operators of Nestlenook.  They alleged claims of negligence, Count I; negligent training and supervision, Count II; and loss of consortium, Count III.  Lafayette Nordic Village, Inc. has been dismissed from the action by stipulation.

## Discussion

The defendants contend that the release on the rental form is enforceable against Adriana and bars her claims against them.  Alternatively, the defendants argue that even if the release does not bar all of the claims, it bars any claim arising out of their negligence in the installation, maintenance, selection, adjustment, and use of the rented skates.  The plaintiffs argue that the release does not bar their claims.

"In New Hampshire, exculpatory contracts are generally prohibited." Barnes v. N.H. Karting Ass'n, 128 N.H. 102, 106 (1986).  Despite the breadth of the general rule, the New Hampshire Supreme Court has established a significant exception when exculpatory contracts, including releases of liability, "(1)[] do not violate public policy; (2) the plaintiff

3

understood the import of the agreement or a reasonable person in his position would have understood the import of the agreement; and (3) the plaintiff's claims were within the contemplation of the parties when they executed the contract." McGrath v. SNH Dev., Inc., 158 N.H. 540, 542 (2009); accord Jenks v. N.H. Motor Speedway, Inc., 2010 WL 830244, at *3 (D.N.H. Mar. 3, 2010).  If the release does not violate public policy, the court must decide whether the release clearly identifies which parties are shielded from liability and the types of claims that are barred. See Porter v. Dartmouth College, 2009 WL 3227831, at *3 (D.N.H. Sept. 30, 2009) (citing Barnes, 128 N.H. at 107).

A.  Public Policy

"A defendant seeking to avoid liability must show that an exculpatory agreement does not contravene public policy; i.e., that no special relationship existed between the parties and that there was no other disparity in bargaining power." Barnes, 128 N.H. at 106.  A special relationship exists when "the defendant is a common carrier, innkeeper or public utility, or is otherwise charged with a duty of public service."  Id.  In addition, a release may be against public policy if "it is injurious to the interests of the public, violates some public statute, or tends to interfere with the public welfare or safety."  McGrath, 158 N.H. at 543.

4

The plaintiffs argue, briefly, that because the defendants are innkeepers the release violates public policy. Whether or not the defendants are innkeepers, the release did not pertain to the usual activities of running an inn. In fact, the plaintiffs were not staying at the inn at Nestlenook, and they assert that the inn was closed for the winter when the accident happened.

The release was part of a rental form for ice skates. Like snowboarding and kart racing, skating is not an activity "of such great importance or necessity to the public that it creates a special relationship." McGrath, 158 N.H. at 544. For similar reasons, the single opportunity to ice skate at Nestlenook did not create a disparity in bargaining power that implicates public policy. Id. Therefore, the release does not violate public policy.

B.  Meaning of the Release

The defendants contend that a reasonable person would have understood that the release applied to liability of Nestlenook for all negligence and specifically to liability arising from the use of the skates. They also contend that Adriana assumed the risks of skating. The plaintiffs argue that neither Adriana nor a reasonable person in her position would have understood that the rental form included a release because she was not

given an opportunity to read it and because the release does not state that it applies to Nestlenooks' negligence in constructing and maintaining the premises and in training and supervising its staff.

1. Opportunity to Read the Release

The plaintiffs argue that Adriana did not understand and that no reasonable person in her position would have understood that she had signed a release of Nestlenook's liability. They assert that Adriana did not have a chance to read the release because the Nestlenook employee who rented the skates to her "appeared to be in a hurry" and because Adriana was not aware that the rental form she signed was a release. They also argue that the rental form did not clearly show that it was release of the defendants' liability.

A plaintiff's failure to read a release "does not preclude enforcement of the release." Barnes, 128 N.H. at 108. As long as the plaintiff had an opportunity to read the release, despite the defendant's employees hurrying to complete the transaction, the plaintiff's failure to do so does not bar the release. Id.; cf. Jenks v. N.H. Motor Speedway, Inc., 2010 WL 830244, at *3-*4 (D.N.H. Mar. 3, 2010) (material factual dispute existed as to whether plaintiff had opportunity to read release where

plaintiff put his name on a sign-up sheet and release may have been obscured).

In this case, the release was printed on the back of the rental form.  The Nestlenook employee who rented the skates to Adriana completed the form, including the sizes and numbers of the skates rented and the date.  Adriana signed the form on the front.

Just above the signature line is the following statement: "I have read the agreement on the back of the form, releasing the inn from liability.  I voluntarily agree to the terms of that agreement."  The agreement referred to is the release on the back, which is comprised of seven paragraphs and signature and date lines.

Although Adriana did not also sign the release on the back of the form, she signed on the front and in doing so, she agreed to the release on the back.  Nothing in the circumstances Adriana describes shows that she did not have an opportunity to read the release.  Therefore, her failure to read the release that was provided to her does not preclude enforcement.  See, e.g., Dean v. MacDonald, 147 N.H. 263, 270 (2001).

The plaintiffs also argue that the lease is unenforceable because it refers to the Inn rather than to Nestlenook.  They contend that because the Inn was closed at the time neither Adriana nor a reasonable person in her position would have

understood who was released from liability.  In this case, a reasonable person would have understood that the Inn encompassed Nestlenook and functionally referred to the entity providing the skates and access to the pond.[1]  See Dean, 147 N.H. at 270; cf. Porter v. Dartmouth College, 2009 WL 3227831, at *3 (D.N.H. Sept. 30, 2009) (release was form provided by ski manufacturer as to its liability and did not release the owner of the ski area).

### 3. Scope of the Release

The plaintiffs contend that if the release is enforceable it applies only to the defendants' negligence in renting the skates and to the activity of skating on the pond.  Based on that limitation, the plaintiffs argue that the release does not bar their claims that allege negligence in constructing and maintaining the path, failing to warn of dangers on the path, and failing to properly train and supervise employees to maintain the premises.  The defendants argue that because Adriana fell while wearing the rented skates and walking from

---

[1] Although the plaintiff's counsel states in an affidavit that the Inn was closed at the time of Adriana's injury, the plaintiffs provide no evidence that Adriana knew the Inn was closed or that a reasonable person would have known that.  In addition, paragraph 6 of the release states:  "I hereby release the Inn <u>and its owners, agents and employees</u> from any and all liability for damage . . . ," which applies to parties other than the Inn. (Emphasis added.)

the skating pond, the release bars all of her claims. Alternatively, the defendants seek to bar the claims to the extent they arise from their negligence related to the skates.

The scope of the release depends on the language used in the release. McGrath, 158 N.H. at 546-47. To be enforceable, a release must "'clearly and specifically indicate[] the intent to release the defendant from liability for personal injury caused by the defendant's negligence.'" Wright v. Loon Mountain Recreation Corp., 140 N.H. 166, 170 (2995) (quoting Barnes, 128 N.H. at 107). The language used is given "its common meaning" and the agreement is given "the meaning that would be attached to it by a reasonable person." McGrath, 158 N.H. at 545 (internal quotation marks omitted).

Pertinent to the plaintiffs' claims in this case, the release on the back of the skate rental form provides: "I understand that there are inherent and other risks involved in the sport for which this equipment is to be used and that injuries are a common and ordinary occurrence of the sport, and I freely assume those risks." The release also states that the signer "hereby release[s] the Inn and its owners, agents and employees from any and all liability for damage to [the signer] . . . resulting from negligence: installation, maintenance, the selection, adjustment and use of the equipment, accepting myself

the full responsibility for any and all such damage or injury which may result."

Taken in the context of the entire release form and the rental agreement, the provision in which the renter assumes responsibility for inherent risks is reasonably interpreted to mean risks inherent in the sport of skating.  The provision that releases liability for negligence is limited to negligence for the specific actions listed.  As such, that provision is reasonably interpreted to pertain to the liability for negligence in providing the rented equipment, that is the ice skates.  Cf. McGrath, 158 N.H. at 545 (release at a ski area applied to negligence in using a snowmobile because it released defendant "from any and all liability for personal injury or property damage which results in any way from negligence" without any limitation).

Adriana was wearing skates when she fell, but she was walking to the gazebo, not skating on the pond.  Because of Nestlenook's arrangement of providing the warming gazebo for skaters to change their footwear which was accessible only by the path to the pond, skaters had to walk in their skates from the pond to the gazebo.  The defendants have not shown that Adriana was engaged in the sport of skating when she fell.

The plaintiffs allege that the defendants were negligent in constructing and maintaining the rubber mat portion of the path,

in failing to protect their patrons and to warn of dangers on the path, and in training and supervising their employees to properly maintain the path.  Although the plaintiffs appear to criticize the skates provided to Adriana in the fact portion of their complaint, their claims do not allege negligence in providing the skates or in maintaining the skating pond. Therefore, the defendants have not shown that the release bars the plaintiffs' claims.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 13) is denied.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph DiClerico, Jr.
United States District Judge

July 16, 2015

cc: Stephen E. Borofsky, Esq.
    David S. Brown, Esq.
    Paul B. Kleinman, Esq.
    Danielle L. Santuccio, Esq.